**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
                                         :
RONNY J. MACON,                          :
                                         :  Civil Action No. 07-2806 (MLC)
            Petitioner,                  :
                                         :
       v.                                :        O P I N I O N
                                         :
MIKE POWER, et al.,                      :
                                         :
            Respondents.                 :
                                         :
```

**APPEARANCES:**

| | |
|---|---|
| Ronny J. Macon, <u>Pro Se</u> | Leslie-Ann M. Justus |
| #433173 | Office of the Attorney General |
| East Jersey State Prison | R.J. Hughes Justice Complex |
| Lockbag R | 25 Market Street, P.O. Box 086 |
| Rahway, NJ 07065 | Trenton, NJ 08625 |
| | Attorney for Respondents |

**COOPER, District Judge**

Petitioner, a prisoner now confined at East Jersey State Prison, petitions for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. The respondents are Administrator Mike Power, and the New Jersey Attorney General. The petition will be denied.

### BACKGROUND

**A.   Factual Background**

As stated in the New Jersey Superior Court oral decision on Petitioner's post-conviction relief motion:[1]

---

[1] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

>At approximately 7:45 a.m. on March 19, 2000, the victim, Marcelino Madena (phonetic) went to the Emery General Store in Asbury Park to purchase coffee and a newspaper. While waiting for the store to open at 8:00 a.m., the defendant [Petitioner Macon] and co-defendant Covington approached him and asked him if he wanted to buy drugs.
>
>After telling them he did not want to purchase drugs, Madena reached into his pocket for change to make a telephone call at a pay phone located outside the store. When Madena pulled out paper bills from his pocket, the defendant and co-defendant approached him from behind, and the defendant put a knife to Madena's throat. Madena states that he felt the blade of the knife on his throat.
>
>The defendant punched Madena twice in the face, where upon the victim fell to the ground. While on the ground, the victim was repeatedly punched by the defendant and co-defendant. Covington took the victim's wallet. Madena was able to see the defendant's face while he was lying on the ground. After the attack, defendant and Covington ran behind the back of the store and went through Madena's wallet.
>
>Madena chased after them, and the defendant and Covington removed $50 from the wallet and said, "Take this Poppy," and threw the wallet. After retrieving his wallet, Madena went to Asbury Park Police Headquarters, reported that two black males had robbed him. Covington was thereafter arrested and identified by Madena as the one who robbed him.
>
>Three days after the robbery, Madena was shown a photo line up with six pictures of individuals who had characteristics similar to that of the defendant. Madena looked at all six photographs and made a positive photo I.D. of the defendant.

(Respondents' Appendix ("Ra") 5, Tr. of PCR Mot., at pp. 8-10).

**B.   Procedural Background**

On June 20, 2000, a Grand Jury returned an indictment against Petitioner and co-defendant Covington, charging them with first-degree robbery, N.J.S.A. 2C:15-1 (count one); fourth-degree

unlawful possession of a weapon, N.J.S.A. 2C:39-5d (count two); and third-degree possession of a weapon for unlawful purposes, N.J.S.A. 2C:39-4d (count three).  On December 12 and 13, 2001, Petitioner was tried by jury and found guilty of all counts.  He was sentenced on June 7, 2002 to 18 years imprisonment, with an 85% period of parole ineligibility, under New Jersey's No Early Release Act, N.J.S.A. § 2C:43-7.2.

Petitioner appealed to the New Jersey Appellate Division, which affirmed the convictions on October 23, 2003.  The New Jersey Supreme Court denied certification on March 25, 2004.

Petitioner filed a state petition for post-conviction relief ("PCR") in July 2004.  The trial court denied relief on July 21, 2005, without an evidentiary hearing.  On January 12, 2007, the Appellate Division affirmed the order denying PCR.  Petitioner's petition for certification to the New Jersey Supreme Court was denied on May 11, 2007.

On June 11, 2007, this Court received Petitioner's petition for a writ of habeas corpus.  On July 5, 2007, Petitioner was advised of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000).  Respondents filed an answer to the petition and the state court record in December 2007.  Petitioner filed objections to the answer on February 28, 2008.

Petitioner asserts in this habeas petition:

1. Denial of due process by the trial court's interrogation of the victim/witness in a manner to rehabilitate his testimony and undermine the defense.

    2.    Insufficient evidence was presented of proof beyond a reasonable doubt.

    3.    Faulty jury instructions regarding identification.

(Pet., ¶ 12). It appears that these claims have been exhausted in the state courts.

## DISCUSSION

**A.   Standards Governing Petitioner's Claims**

28 U.S.C. § 2254 provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> As to any claim adjudicated on the merits in state court

proceedings, the writ shall not issue unless the adjudication of

the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless

arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter).  Id. at 407-09.  To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable.  See id. at 409.  In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts.  See Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

    Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference.  See Chadwick v. Janecka, 302 F.3d 107, 116 (3d Cir. 2002).  As to claims presented to, but unadjudicated by, the state courts, a federal court may exercise independent judgment.  See Hameen v. State of Del., 212

F.3d 226, 248 (3d Cir. 2000); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal law, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Att'y Gen., 878 F.2d 714, 721-22 (3d Cir. 1989).

**B. Due Process Claim Regarding Trial Judge's Questioning of Witness (Ground One)**

Petitioner argues that the trial court violated his due process rights by extensively questioning the witness complainant ("Witness") as to his description of his attackers.

Five pages of the trial transcript are dedicated to the judge's questioning of the Witness at the end of direct and cross examination. At the end of the questioning, the judge asked: "Any questions in light of the questions I asked?  Prosecutor? . . . Counsel?"  (Ra1 at pp. 65-71).  Counsel did not object to the questioning.  During deliberations, the jury asked that the

6

questions asked by the judge and answers by the Witness be read back.  The judge informed the jury on two occasions that his questions should not indicate that he had an opinion one way or the other about the case.

Petitioner raised this issue on direct appeal.  The Appellate Division found:

> At trial, Medina was examined by counsel, the trial judge asked Medina a series of questions regarding Medina's prior identification of defendant.  Defendant contends that the judge's examination unfairly undermined his counsel's cross-examination, exceeded the proper bounds of [New Jersey Rule of Evidence 614], and improperly bolstered the State's case.  Because there was no objection at trial, defendant must demonstrate that the alleged error was "clearly capable of producing an unjust result."
>
> Our courts have long rejected the "arbitrary and artificial methods of the pure adversary system of litigation which regards the lawyers as opposing players and the judge as a mere umpire whose only duty is to determine whether infractions of the rules of the game have been committed."  Instead, we view the intervention of a trial judge in the examination of witnesses as "both a power and a duty," often a necessary part of the judge's obligation to ensure a fair trial "conducted in [an] orderly and expeditious manner."
>
> * * *
>
> Both N.J.R.E. 611(a), which requires that the trial judge "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to . . . make the interrogation and presentation effective for the ascertainment of truth," and N.J.R.E. 614, which allows a judge to "call" and "interrogate" a witness, demonstrate the importance of a judge's involvement in the presentation of the evidence.
>
> The trial judge's authority to intervene, however, is not limitless.  While "[t]he intervention of a trial judge is a 'desirable procedure,' . . . it must be exercised with restraint."  We are satisfied, based upon

> our review of the record, that the trial judge did not cross the "fine line that separates advocacy from impartiality."
>
> While the trial judge's examination of Medina extended slightly more than five transcript pages, we note that the judge never took on the role of advocate but merely put his non-leading and non-suggestive questions to the witness in order to clarify the testimony.  The judge later explained, in denying defendant's motion for a new trial, that Medina "was a frightened, simple working man with a language barrier" and, for that reason, he carefully brought out "simple facts" and asked "simple questions" which were "not designed to trick, or lead or favor the witness or either side but to go squarely to the issue of identification."  This explanation accurately describes the trial judge's examination and its valid purpose in this case.  Thus, we find no error in the trial judge's actions.  Moreover, we conclude from defendant's failure to object at the time that defendant also viewed the trial judge's intrusion into the interrogation of the witness to be "of no moment."

(Ra 15 at pp. 4-6) (internal cites omitted).  The Appellate Division also noted that the trial court's "additional instruction emphasized for the jury that no significance was to be attached to the fact that it was the judge who asked these questions."  (Ra 15 at p. 6).

The right to due process pursuant to the Fourteenth Amendment guarantees every defendant a fair and impartial trial in a fair tribunal.  See In re Murchison, 349 U.S. 133, 136 (1955).  The issue before the Court is whether the trial court questioned the Witness in a manner so prejudicial that Petitioner was precluded from receiving a fair trial.  See United States v. Beaty, 722 F.2d 1090, 1093 (3d Cir. 1983).

8

The judge's role is not that of a mere moderator; the pursuit of fairness often requires the judge to make certain all necessary evidence is adduced from the trial and that the jury has properly assimilated that evidence.  See San Juan County v. United States, 503 F.3d 1163, 1174 (10th Cir. 2007) (stating "on its own authority the court can call and question witnesses"); see also, State v. Laws, 50 N.J. 159 (1967); State v. Guido, 40 N.J. 191, 207 (1963); Beaty, 722 F.2d at 1093-94.  Although the trial judge is given wide latitude to obtain and clarify evidence during the trial, great care should be taken to avoid the appearance of partiality that would mislead the jury.  See Laws, 50 N.J. at 181; Guido, 40 N.J. at 208; Beaty, 722 F.2d at 1093.

A trial judge may question a witness to develop or clarify evidence.  See Laws, 50 N.J. at 181; State v. Riley, 28 N.J. 188, 200 (1958); Beaty, 722 F.2d at 1093.  The judge should limit questions to those necessary for clarification, especially when dealing with a key witness, to avoid any implication of bias to the jury as to guilt.  See Beaty, 722 F.2d at 1095.

The Witness here was testifying through an interpreter.  In deciding the motion for a new trial, the trial court noted that:

> This Court's feel of the case was clearly that the witness, that the witness' inability to speak English was a major factor in the witness' difficulty in explaining himself.  A trial is a search for the truth.  The Court asked open ended, even handed, non-leading questions of this person.  The Court did not lend its prestige to either side or give that appearance.

> The victim, Mr. Medina, was a frightened, simple working man with a language barrier.  The Court had to take care and did so to bring out simple facts and ask simple questions not designed to trick, or lead or favor the witness or either side but to go squarely to the issue of identification.  The witness' identification of the defendant was that he was the man on top of him at the time of the robbery.
>
> * * *
>
> Also, as per the instructions given to the jury by the Court twice, once during the jury instructions and once after the questions were read back to them on the read back, I stated, "The fact that I may have asked questions should not indicate that I have any opinion one way or the other about this matter.  I don't."
>
> The fact that the jury found the defendant guilty and in doing so requested a read back of the Court's questioning does not mean in and of itself that the defendant was denied a fair trial.

(Ra 3 at pp. 42-43).

Questions designed to clarify testimony that do not pertain to an ultimate issue of fact for the jury are proper unless they convey to the jury judicial belief as to the proper outcome of the trial.  See Beaty, 722 F.2d at 1094.  When scrutinizing judicial interrogation of a witness, it is not the number of questions that is at issue, but whether the defendant was prejudiced.  See United States v. Kelly, 329 F.2d 314, 325 (3d Cir. 1964).

The judge's questioning of the Witness here, without more, cannot be perceived to raise an implication for the jury as to the proper outcome of the case.  The judge deemed it necessary to take the time to elicit clear and presumably unconfused responses from the Witness.  This Court is unpersuaded that these questions

10

gave the jury an impression of the judge's opinion regarding Petitioner's guilt. A review of the record reveals that the judge's questions were simple, direct questions regarding identification, and in no way implicated the outcome of the case. The jury's request the judge's questions to be read back was most likely due to the straightforwardness of the questions and answers of the Witness, and does not implicate constitutional concerns. In the absence of judicial prejudice, the Court finds that Petitioner was not deprived of a fair trial.

Petitioner also has not demonstrated that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Accordingly, this ground for a writ of habeas corpus will be denied.

**C.   Claim Regarding Weight of Evidence (Ground Two)**

Petitioner argues that in denying the motion for a judgment of acquittal submitted by the defense at the end of the State's case, the trial court completely ignored the "complete absence of any direct or circumstantial proof corroborating the Witness's testimony regarding the offenses alleged by the State in the indictment." (Petitioner's Memorandum of Law in Support of

11

Habeas Petition, at p. 6). Petitioner alleges no reasonable trier of fact could have found him guilty beyond a reasonable doubt, based on the Witness's testimony of conflicting and inconsistent statements.

The Appellate Division examined this claim on direct appeal and found that it was "clearly without merit and [did] not warrant discussion." (Ra 15 at p. 3).

A claim that the jury's verdict was against the weight of the evidence is "essentially a matter of state law, and does not raise a federal constitutional question unless the record is completely devoid of evidentiary support in violation of Petitioner's due process." Douglas v. Hendricks, 236 F.Supp.2d 412, 435-36 (D.N.J. 2002), aff'd, 456 F.3d 403 (3d Cir. 2006). Only where, "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" should the writ issue. See Jackson v. Virginia, 443 U.S. 307, 319 (1979). This standard must be applied "with explicit reference to the elements of the criminal offense as defined by state law." Id. at 324 n.16; see Orban v. Vaughn, 123 F.3d 727 (3d Cir. 1997). State court factual determinations are presumed to be correct. See Werts v. Vaughn, 228 F.3d 178, 186 (3d Cir. 2000).

Petitioner here does not dispute that the State proved that the crimes were committed. He disputes only the adequacy of the

12

proof as to identity. A review of the record here demonstrates sufficient evidence against Petitioner in support of his conviction. Petitioner submitted misidentification as a defense. Defense counsel cross-examined the Witness to elicit testimony supporting the defense. The jury weighed the credibility of the evidence and concluded that Petitioner was guilty. Petitioner presents no reason for the Court to disturb that finding. Thus, this ground for a writ of habeas corpus will be denied.

**D.   Claim Regarding Jury Charge (Ground Three)**

Petitioner asserts that his constitutional rights were violated when, in reading the instruction to the jury on identification, the trial judge referred to the inculpatory part of the Witness's identification testimony but not the exculpatory part. The Appellate Division examined this claim on direct appeal and found that it was "clearly without merit and [did] not warrant discussion." (Ra 15 at p. 3).

A jury instruction that is inconsistent with state law generally does not merit federal habeas relief. Where a federal habeas petitioner challenges jury instructions given in a state criminal proceeding,

> [t]he only question for us is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. It is well established that the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. In addition, in reviewing an ambiguous instruction ..., we inquire whether there is a reasonable

>likelihood that the jury has applied the challenged instruction in a way that violates the Constitution. And we also bear in mind our previous admonition that we have defined the category of infractions that violate fundamental fairness very narrowly. Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (cites and quotes omitted). Thus, the Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law." Smith v. Horn, 120 F.3d 400, 416 (3d Cir. 1997); see In re Winship, 397 U.S. 358, 364 (1970) ("Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"); Sandstrom v. Montana, 442 U.S. 510, 523 (1979) (jury instructions that suggest jury may convict without proving each element of crime beyond reasonable doubt violate constitutional rights of the accused).

In evaluating a challenged instruction,

>a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge. If the charge as a whole is ambiguous, the question is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.

Middleton v. McNeil, 541 U.S. 433, 437 (2004) (cites and quotes omitted).

But a jury instruction that "reduce[s] the level of proof necessary for the Government to carry its burden [of proof beyond

14

a reasonable doubt] is plainly inconsistent with the constitutionally rooted presumption of innocence." Cool v. United States, 409 U.S. 100, 104 (1972). "[T]rial courts must avoid defining reasonable doubt so as to lead the jury to convict on a lesser showing than due process requires." Victor v. Nebraska, 511 U.S. 1, 22 (1994).

The jury instruction here complied with state law, as the trial judge read the model jury charge on identification. Further, examining the instruction as a whole, the charge clearly advised the jury of Petitioner's theory of the case: the Witness misidentified him. The trial judge charged that Petitioner argued that he was not at the scene of the crime, it was a case of mistaken identity, and the State had not proven Petitioner's identity beyond a reasonable doubt. (Ra 2 at pp. 76-77, 101-102). The judge noted that the jury must find Petitioner guilty beyond a reasonable doubt. (Ra 2 at pp. 61-62). Thus, this Court finds no violation of Petitioner's due process rights, and this ground for relief will be denied.

## CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional

right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).

Petitioner here has failed to make a substantial showing of the denial of a constitutional right.  Accordingly, no certificate of appealability will issue.

## CONCLUSION

The Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, will be denied.  The Court further finds that no certificate of appealability will issue.  The Court will issue an appropriate order and judgment.

                                              s/ Mary L. Cooper
                                              **MARY L. COOPER**
                                              United States District Judge

Dated:     September 29, 2008